## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTMARK INSURANCE COMPANY and TRUSTMARK LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 09 C 6825 |
| v. | ) ) | Judge Joan B. Gottschall |
| HARRINGTON BENEFIT SERVICES, INC. d/b/a FISERV HEALTH – KANSAS, UNITED MEDICAL RESOURCES, INC., and UNITED HEALTHCARE, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION & ORDER

Plaintiffs Trustmark Insurance Company and Trustmark Life Insurance Company (collectively, "Trustmark") brought this action following the breakdown of its business relationship with defendant Harrington Benefit Services, Inc. ("Harrington"). In its complaint, Trustmark sought recovery from Harrington, United Medical Resources, Inc. ("UMR") and United Healthcare, Inc. ("United") under a variety of contract and tort theories. The defendants answered several counts of the complaint. Presently before the court is defendants' motion to dismiss the remaining counts, specifically Trustmark's claims for breach of fiduciary duty (Count II), inducement to breach fiduciary duty (Count III), and fraud (Count IV).

### I. BACKGROUND

According to the complaint, Harrington and Trustmark had a productive business relationship for nearly two decades based on Harrington's sale and administration of Trustmark insurance to groups of insureds, most recently pursuant to a 2003

Administrative Agreement (the "Agreement") between Trustmark and Harrington. (Compl. ¶ 9.) Trustmark allegedly relied on Harrington, as administrator of a Trustmark insurance block, to provide Trustmark with accurate data regarding the rate of insurance claims that Harrington processed and paid so that Trustmark could establish proper premium rates based on historical trends. (*Id.* ¶ 11.) In 2008, United, through its subsidiary UMR, acquired Harrington and allegedly assured Trustmark that the Harrington-Trustmark relationship would continue without disruption. (*Id.* ¶ 12.) However, according to Trustmark, Harrington (allegedly even before its acquisition by United) ceased to process claims on a consistent basis, a problem exacerbated by staffing shortages brought about by United-imposed austerity measures. (*Id.* ¶ 13.) Harrington's alleged failure to process claims in a timely fashion led to a backlog of unprocessed claims, a host of violations of the Agreement, losses to Trustmark based on its inability to set proper premium rates, and numerous violations of state laws. (*Id.* ¶¶ 14-18.) The parties briefly attempted to resolve their dispute amicably, but Harrington and United allegedly refused to provide Trustmark with documentation regarding claims payment, leading to the instant litigation. (*Id.* ¶¶ 21-23.)

## II. LEGAL STANDARD

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Legal conclusions, however, are not entitled to any assumption of truth.

*Ashcroft v. Iqbal*, 556 U.S. ____, 129 S. Ct. 1937, 1940 (2009). The plaintiff generally need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As an exception to the general notice pleading standard, a plaintiff pleading fraud must do so with particularity. *See* Fed. R. Civ. P. 9(b); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

### III. ANALYSIS

Defendants move to dismiss Trustmark's claims for breach of fiduciary duty against Harrington (Count II), inducement to breach fiduciary duty against UMR and United (Count III), and fraud against Harrington and United (Count IV). The court addresses each claim in turn.

**A.  Breach of Fiduciary Duty (Count II)**

In their motion, defendants assert that Trustmark has not stated a claim against defendant Harrington for breach of fiduciary duty because Trustmark's allegations, even assumed to be true, do not support the existence of a fiduciary relationship, and because Trustmark seeks recovery of purely economic loss, which recovery Illinois law forbids pursuant to the "*Moorman*" Doctrine. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982).

    1.   <u>Whether Trustmark Alleges a Fiduciary Relationship</u>

Defendants first argue that Harrington's relationship with Trustmark was entirely contractual, and that Harrington undertook no fiduciary duty, whether by contract or otherwise, with respect to Trustmark. "The essence of a fiduciary relationship is that one party is dominated by the other." *Pommier v. Peoples Bank Maycrest*, 967 F.2d 1115,

1119 (7th Cir. 1992) (citing Illinois law). One party's trust in a putative fiduciary is insufficient, standing alone, to establish a fiduciary relationship; the putative fiduciary must have also gained "influence and superiority" over the other party. *Id.*; *see also Hubbard v. Schumaker*, 402 N.E.2d 857, 860 (Ill. App. Ct. 1980).[1] Therefore, a fiduciary relationship "arises only if 'one person has reposed trust and confidence in another who thereby gains influence and superiority over the other.'" *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992) (citing Seventh Circuit and Illinois case law).[2]

Trustmark argues that its allegations state a claim for the existence and breach of a fiduciary duty because, according to the complaint: Harrington represented Trustmark to Trustmark's insureds, indicating Trustmark's trust of Harrington; Harrington gained superior information regarding Trustmark's insureds and the status of insurance claims within its purview; and the Agreement stated that Harrington held premiums and charges that it collected from those insureds for Trustmark in a fiduciary capacity. (Compl. Ex. A 4, ¶ II.C.2.)

An initial issue is whether, under Illinois law, commercial relationships in the insurance industry can be fiduciary in nature under any circumstances. Trustmark relies principally on the holding of another court in this district that a reinsurer stated a claim for breach of fiduciary duty against its reinsured arising from the reinsured's performance

---

[1] Courts presume certain relationships, such as the attorney-client relationship, to be fiduciary in nature. *See Mutuelle Generale Francaise Vie v. Life Assurance Co. of Pa.*, 688 F. Supp. 386, 398 (N.D. Ill. 1988) (citing Illinois case law). Trustmark does not allege such a relationship here, but rather argues that Harrington gained superiority and influence in the course of the Trustmark-Harrington relationship and therefore had a fiduciary duty to Trustmark.

[2] While motions to dismiss generally allow the consideration only of the complaint, an exception to that rule allows the court to consider matters that are referenced in the complaint and central to the plaintiff's claim. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Here, Trustmark's claims are based in large part on the Agreement between the parties, which is referenced in and attached to its complaint. The court therefore properly considers the Agreement in the resolution of the instant motion.

of its administrative duties regarding the insured policies. *See Mutuelle Generale Francaise Vie v. Life Assurance Co. of Pa.* (*Mutuelle*), 688 F. Supp. 386, 398 (N.D. Ill. 1988) (Shadur, J.). In determining whether the allegations before it stated a claim for breach of fiduciary duty, the *Mutuelle* court distinguished between the reinsured's *selection* of policies for reinsurance, for which the court found no fiduciary duty, and the *administration* of such policies. *Id.* The court found that, assuming the allegations in the complaint to be true, a fiduciary duty arose from the administration of such policies because: the reinsured was the reinsurer's agent in providing information regarding the subject policies; the reinsured alone had information regarding the reinsured policies; and the reinsurance contract noted that the reinsurer "was entitled to place its 'highest faith'" in the reinsured. *Id.* (quoting contract). Two subsequent decisions from this court have declined to find the existence of a fiduciary duty arising from insurance contracts lacking the "highest faith" language invoked in the *Mutuelle* decision. *See PXRE Reinsurance Co. v. Lumbermens Mut. Cas. Co.*, 330 F. Supp. 2d 981, 984 n.2 (N.D. Ill. 2004); *see also Int'l Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.* (*Int'l Surplus*), No. 88 C 320, 1989 WL 165045, at *5 (N.D. Ill. Dec. 29, 1989). Moreover, both the *Mutuelle* court and the *International Surplus* court noted that no Illinois appellate court, including the Illinois Supreme Court, had found that a reinsurance relationship gave rise to a fiduciary relationship. *Mutuelle*, 688 F. Supp. at 397; *see also Int'l Surplus*, 1989 WL 165045, at *5.

Since those decisions, at least one Illinois appellate court has recognized that an insurer's agent owes a fiduciary duty to the insurer. *See Guarantee Trust Life Ins. Co. v. Gilldorn Ins. Midwest Corp.* (*Gilldorn*), 608 N.E.2d 563, 568 (Ill. App. Ct. 1992). In

*Gilldorn*, the agent agreed to forward insurance applications, certain insurance policies, and all collections to the insurer. *Id.* at 566. The appellate court found that the parties' relationship, which the contract between the two termed an agency relationship, *id.*, was fiduciary in nature. *Id.* at 568. Based on this decision, and others recognizing that an agency relationship gives rise to a fiduciary duty, *see State Sec. Ins. Co. v. Frank B. Hall & Co.*, 630 N.E.2d 940, 946 (Ill. App. Ct. 1994), Illinois law imposes a fiduciary relationship in some circumstances in the insurance industry, particularly in situations in which an agency relationship exists.

Defendants argue that no agency relationship is alleged here because the Agreement between the parties describes Harrington as an independent contractor. (Compl. Ex. A 12 ¶ IX.A.) However, whether an agency relationship exists is generally a fact-centered inquiry, *see Doe v. Brouillete*, 906 N.E.2d 105, 116 (Ill. App. Ct. 2009), and is not definitively resolved by the labels the parties place on their relationship. *See Daniels v. Corrigan*, 886 N.E.2d 1193, 1204 (Ill. App. Ct. 2008). Therefore, a more thorough examination of the alleged Trustmark-Harrington relationship is necessary to determine whether Trustmark sufficiently alleges the existence of a fiduciary relationship.

Trustmark's assertion that Harrington owed it a fiduciary duty is based, in part, on language from the Agreement stating that Harrington held certain funds in a fiduciary capacity for Trustmark. (*See* Compl. Ex. A 4 ¶ C.2.) However, Trustmark does not allege that Harrington breached its fiduciary duty with respect to funds it collected; rather, the allegedly breached fiduciary duty is premised on Harrington's provision of information to Trustmark and on Harrington's processing of claims insured by

Trustmark. As the *Mutuelle* court found, a party may be another's fiduciary for some purposes and not others, 688 F. Supp. at 398, leaving open the question of whether the allegations in this case support the imposition of a fiduciary duty on Harrington related to its processing of claims.

The question of whether a fiduciary duty exists is generally a question of fact, *see Taino v. Sanchez*, 498 N.E.2d 571, 574 (Ill. App. Ct. 1986), and, therefore, frequently inappropriate for resolution on a motion to dismiss. *See E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 985 (N.D. Ill. 2003). In this case, Trustmark alleges that Harrington was its agent, and that it trusted Harrington to report the information obtained by Harrington in an accurate manner. (Compl. ¶¶ 10-11.) The Agreement further states that Harrington was to act only in the "best interest" of Trustmark. (*Id.* Ex. A 1 ¶ II.A.1.) Moreover, the Agreement provides that Trustmark owns the records and data that Harrington generated (*id.* Ex. A 2 ¶ II.A.3), that the data and information that Harrington received in connection with the performance of its duties under the Agreement was "confidential and proprietary," and that Harrington was obligated not to disclose the information or make use of it for its own purposes. (*Id.* Ex. A 10-11 ¶ VII.B.2.)

The complaint and the Agreement, taken together, suggest that Harrington may have acted as agent for Trustmark in processing claims and obtaining information from insureds, and that it assumed the duty to act exclusively on Trustmark's behalf, a duty indicative of a fiduciary relationship. *See, e.g.*, *In re Estate of Lis*, 847 N.E.2d 879, 886 (Ill. App. Ct. 2006). The complaint also suggests that Trustmark placed confidence in Harrington, and that Harrington accepted Trustmark's trust and thereby gained

7

superiority. At this early stage, the court cannot conclude that these allegations fail to state a claim for breach of fiduciary duty.

2. Whether Trustmark Seeks only Economic Loss

Defendants also urge dismissal of Trustmark's breach of fiduciary duty claim on the ground that Trustmark improperly seeks recovery of purely economic loss in violation of the *Moorman* Doctrine. *See Moorman Mfg.*, 435 N.E.2d 443. In *Moorman*, the Illinois Supreme Court held that economic loss is generally not recoverable in tort. *Id.* at 453. This doctrine is subject to several exceptions, including:

> (1) where the plaintiff sustained damage, *i.e., personal injury or property damage,* resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.,* fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.

*In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (citing *Moorman*, 435 N.E.2d at 451-52) (emphasis in original). Trustmark points to a fourth exception, namely, for economic losses arising from an extra-contractual duty, such as the attorney-client or accountant-client relationship. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514-15 (Ill. 1994). Illinois courts have expanded the fourth exception to include other fiduciary relationships, including an insurance broker-insured relationship. *See Kanter v. Deitelbaum*, 648 N.E.2d 1137, 1140 (Ill. App. Ct. 1995).

Trustmark argues that, based on its claim for breach of fiduciary duty and its fraud claim, discussed further within, it adequately alleges economic loss pursuant to

8

both the second and fourth exceptions.[3]  Here, the court has found that Trustmark has stated a claim for breach of fiduciary duty; consequently, at minimum, the fourth exception to the *Moorman* Doctrine applies.  Defendants' motion to dismiss is denied with respect to Count II.

**B.    Inducement to Breach Fiduciary Duty (Count III)**

Defendants maintain that Trustmark has not stated a claim for inducement to breach a fiduciary duty against defendants UMR and United.  A third party induces a breach a fiduciary duty and is liable to the party to which a fiduciary duty is owed when it: (1) colludes with a fiduciary in committing a breach of duty; (2) induces or participates in such a breach; and (3) obtains the benefits from that breach.  *Paul H. Schwendener, Inc. v. Jupiter Elec. Co.*, 829 N.E.2d 818, 827 (Ill. App. Ct. 2005).  According to defendants, Trustmark's Count III fails both because Trustmark has failed to allege adequately a breach of fiduciary duty, and because Trustmark has failed to allege that UMR and United knowingly accepted benefits resulting from any such breach.  Defendants' first argument fails because, as discussed in section III.A above, Trustmark has adequately alleged a fiduciary relationship.  With regard to defendants' second argument, Trustmark notes that its complaint contains the allegation that United and UMR benefitted Harrington's breach financially, "saving money by refusing to hire additional claim handling employees."  (Compl. ¶ 38.)  This allegation sufficiently

---

[3]  As defendants argue, the third exception to the *Moorman* Doctrine applies only to businesses that have the principal role of providing information for the guidance of others, and does not apply to businesses that supply information in a manner incidental to the provision of other products or services. *See First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006).  Trustmark does not urge the application of this factor to its breach of fiduciary duty claim against Harrington here, and the complaint and the Agreement suggest that Harrington provided Trustmark not only with information but also with services, such as claims processing and premium collection.

alleges that United and UMR benefited from Trustmark's alleged breach, and defendants' motion to dismiss is consequently denied with respect to Count III.

C.    **Fraud (Count IV)**

Finally, defendants seek dismissal of Trustmark's fraud claim, brought against defendants Harrington and United, on the grounds that it alleges only failure to keep contractual promises, not fraud, and that it has not pled with particularity as required by Federal Rule of Civil Procedure 9(b). As defendants argue, an unfulfilled promise to perform an act, even if the promisor does not intend to keep the promise when he makes it, is insufficient to constitute fraud. *See Nat'l Wrecking Co. v. Midwest Terminal Corp.*, 601 N.E.2d 999, 1007 (Ill. App. Ct. 1992). In response, Trustmark points to allegations that, well after it entered into the Agreement, defendants misrepresented the size of Harrington's backlog of claims, then represented that Harrington's backlog of claims "was being reduced to normal or close to normal levels when, in fact, that was not the case . . . ." (Compl. ¶ 44.) These misrepresentations are not simply a contractual promise that defendants later did not keep, but rather a representation regarding the present state of a backlog of claims.

However, these allegations are not pled with particularity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that fraud be pled with particularity which, according to the Seventh Circuit, "means the who, what, when, where, and how" of the fraud. *DiLeo*, 901 F.2d at 627. Trustmark urges that this standard should be relaxed in this case, noting that in cases involving complex fraud, courts have required less particularity. *Mutuelle Generale*, 688 F. Supp. at 393. However, even if the fraud alleged in this case is complex, "the complaint must, at minimum, . . . 'state the time,

place, and content of the alleged communications perpetrating the fraud.'" *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (citing *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991)). Trustmark must plead who made the representations at issue, when they were made, and by what means, but has not done so. Consequently, defendants' motion is granted in part with respect to Count IV. Because Trustmark may be able to remedy this deficiency, dismissal will be without prejudice.

Trustmark also asserts that it has stated a claim for fraud based on an additional alleged misrepresentation that, at a meeting between defendants and Trustmark, defendants "affirmatively represented to Trustmark that Defendants . . . would continue the business relationship between Defendant Harrington and Trustmark without disruption, Defendant Harrington would continue to provide superior service to Trustmark and its insureds, and nothing would change in the parties' relationship to Trustmark's detriment." (*Id.* ¶ 48.) These latter representations are, at best, promises to act, not representations of fact, and as a consequence would normally be unactionable due to the bar on promissory fraud. Trustmark notes, however, that the bar on promissory fraud actions is subject to an exception "where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud." *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) (citing Illinois law) (internal quotation marks omitted). The "scheme" exception applies to promissory fraud claims in which a party relies to its detriment on the promise at issue. *Id.* This exception also requires more than just a single breached promise; the defendant must have engaged

11

in a "pattern of fraudulent acts." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999).

Here, Trustmark alleges that United and Harrington executives made a single group of promises regarding the future of the parties' relationship, and that Trustmark reasonably relied on those promises to its detriment. (Compl. ¶¶ 48, 53.) Because the court dismisses without prejudice Trustmark's other fraud allegations regarding the defendants' representations about the state of the claims backlog, defendants' executives' allegedly fraudulent promises currently stand alone and therefore do not describe the requisite pattern of fraudulent acts. However, Trustmark has been granted leave to re-plead defendants' alleged misrepresentations regarding the claims backlog. Taken with the executives' alleged misrepresentations, Trustmark may be able to plead allegations suggesting a pattern of fraudulent acts. Therefore, Trustmark's remaining allegations in Count IV are dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted with respect to Count IV and denied with respect to Counts II and III. Trustmark is granted 21 days to re-plead in a manner consistent with this opinion.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 15, 2010